UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RUBEN MOLINA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:12-CV-280 |
| § | |
| JOHN MCHUGH, § | |
| § | |
| Defendant. § | |

## ORDER

Plaintiff Ruben Molina (Molina), a journeyman mechanic employed at the Corpus Christi Army Depot (CCAD), brings this suit against his employer under the Civil Rights Act of 1964 and the Age Discrimination in Employment Act alleging discrimination on the basis of age, race, and sex, as well as retaliation for protected activity. D.E. 1. Defendant, John McHugh, Secretary, Department of the Army (McHugh), has filed his Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for Summary Judgment (D.E. 14) arguing that Molina has failed to allege sufficient facts to support a claim for sex discrimination and that his other claims fail for an inability to prove a *prima facie* case. For the reasons set out below, the Motion (D.E. 14) is GRANTED.

### RULE 12(b)(6) CHALLENGE TO SEX DISCRIMINATION CLAIM

McHugh seeks dismissal of the sex discrimination claim under Fed. R. Civ. P. 12(b)(6), arguing that the Complaint (D.E. 1) fails to state a claim upon which relief can be granted. The test of pleadings under Rule 12(b)(6) is devised to balance a party's right to redress against the interests of all parties and the court in minimizing expenditure of

time, money, and resources. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1966 (2007). The standard for determining whether a complaint states a cognizable claim has been outlined by the United States Supreme Court in *Twombly, supra* and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Furthermore, "Pleadings must be construed so as to do justice." Rule 8(e). The requirement that the pleader "show" that he is entitled to relief has been construed to require "more than labels and conclusions[;] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)).

Factual allegations are required, sufficient to raise the entitlement to relief above the level of mere speculation. *Twombly*, 127 S.Ct. at 1965. Those factual allegations must then be taken as true, even if doubtful. *Id*. In other words, the pleader must make allegations that take the claim from "conclusory" to "factual" and beyond "possible" to "plausible." *Id*., 127 S.Ct. at 1966. The *Twombly* court stated, "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974.

The Court, elaborating on *Twombly*, stated, "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id*. In dismissing the claim in *Iqbal*, the Court stated, "It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." 129 S.Ct. at 1951.

To state a claim for sex discrimination, Molina must show that (1) he is a member of a protected class; (2) he was qualified for the position sought; (3) he was subject to an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside his class. *Fahim v. Marriott Hotel Servs*., 551 F.3d 344, 350 (5th Cir. 2008). Plaintiff is male. His supervisors and co-workers, as described in his Complaint (D.E. 1) and in his Response (D.E. 17), are male. No facts addressed in his Complaint reflect, or even attempt to reflect, disparate treatment based on his sex. According to the standards expressed in Fed. R. Civ. P. 8, *Twombly*, and *Iqbal*, Plaintiff has failed to state a claim upon which relief may be granted for sex discrimination. Pursuant to Fed. R. Civ. P. 12(b)(6), the Motion to Dismiss is GRANTED and the claim for sex discrimination is DISMISSED.

## RULE 56 CHALLENGE TO REMAINING CLAIMS

Plaintiff has not recited any direct evidence of discrimination or retaliation. Therefore, his remaining claims are based on circumstantial evidence. The Court applies the *McDonnell Douglas* framework to determine the viability of Plaintiff's claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination or retaliation. Upon doing so, the burden of production shifts to the

employer to provide a legitimate, non-discriminatory reason for the action. If the defendant offers such a justification, the burden shifts back to the plaintiff, who can attempt to show that the defendant's proffered reason is simply a pretext for discrimination. *See generally, Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881 (5th Cir. 2003). On motion for summary judgment, if the plaintiff cannot demonstrate a *prima facie* case, then the defendant is entitled to judgment dismissing the action.

The elements of proof required to establish a *prima facie* case for each of Plaintiff's remaining claims—race and age discrimination and retaliation—include proof of an adverse employment action. *E.g., LeMaire v. Louisiana Dep't of Transportation & Development*, 480 F.3d 383, 388 (5th Cir. 2007) (retaliation); *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (race discrimination); *Smith v. City of Jackson, Mississippi*, 351 F.3d 183, 196 (5th Cir. 2003) (age discrimination). To constitute an "adverse employment action," the action must be materially adverse. *Stewart v. Mississippi Transportation Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000).

> Transfers can constitute adverse employment actions if they are sufficiently punitive or if the new job is markedly less prestigious and less interesting than the old one. This court has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in "relatively trivial matters." For example, in the education

> context, this court has held that " 'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation."
>
> Given the narrow view of what constitutes an adverse employment action, this court has held that the following are not adverse employment actions: (1) mere accusations or criticism; (2) investigations; (3) psychological testing; (4) false accusations; and (5) polygraph examinations that do not have adverse results for the plaintiff.

*Id.* at 157-58 (citations omitted).

The law separates significant from trivial harms and filters out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing. *Stewart*, 586 F. 3d at 331. As the United States Supreme Court has observed, anti-discrimination and retaliation laws were not intended to prescribe a general civility code for the American workplace. *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

Molina complains that he was "removed from a job assignment and replaced by younger white males." D.E. 17, p. 1. This is a reference to his work on a test cell alignment, which his supervisor criticized as taking too long, perhaps because he did not use a torque wrench. D.E. 17, p. 5. Molina, admitting that the project was taking a long time, suggests that it was because he was also supervising other employees at the same time. D.E. 21, p. 5; 21-2, pp. 3-4. As noted above, anti-discrimination law was not intended to give the federal courts the responsibility to micro-manage work assignments

within a particular position. Being reassigned from the Test Cell 18 project was not a discharge, demotion, refusal to hire, refusal to promote, or reprimand. And as Molina testified, "A: Well, he decided to pull me out of there, because he thought I was taking too long. Q: And is that management's prerogative? A: Yes, that is. That is, yes." D.E. 17-1, p. 26.

While his transfer to a different team was a lateral one, Molina complains that he lost 16 hours of overtime each week and his new position impaired his prospects for promotion. "[A] decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII." *Banks v. East Baton Rouge Parish School Board,* 320 F.3d 570, 575 (5th Cir. 2003). A loss of the ability to earn overtime, however, can constitute an adverse employment action under certain circumstances, as it involves a loss of hours and income. *Haire v. Board of Supervisors*, 719 F.3d 356, n. 16 (5th Cir. 2013). In contrast, cutbacks that were applied to everyone are not actionable. *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 188 (5th Cir. 2012).

In order to survive summary judgment, Molina must offer substantiating evidence in support of his claim. Fed. R. Civ. P. 56; *Haire, supra.* Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden on summary judgment in an employment discrimination case. *Magiera v. City of Dallas*, 389 Fed. Appx. 433, 438 (5th Cir. 2010) (citing *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)). The allegation of lost overtime and Molina's affidavit

offered in support are impermissibly conclusory. D.E. 21-2, p. 3. Furthermore, any claim to being ready, willing, and able to work overtime is contradicted by his own testimony in which he claims to have suffered stress and anxiety and sought workplace accommodations[1] for his condition. D.E. 21-2, p. 2; D.E. 21-3. He cited those problems as the reason he was not seeking overtime by his request to move to the night shift. "But I wasn't wanting to move to overtime, to night shift because of the overtime. I wanted to move because of the stuff I was going through. I was getting stressed out." D.E. 17-1, p. 19.

His prior overtime appeared to be related to the complained-of slow pace at which Molina was getting his job done—a priority job that had a deadline. D.E. 17-1, pp. 20-22, 46. He does not offer proof that: (1) overtime remained available in his prior position after completion of the test cell job he had been working on (see D.E. 17-1, pp. 45-49, 52-53 (Molina's overtime was specifically related to completing the test cell job)); (2) any overtime that remained available in his prior position was still available in the same number of hours or would be unclaimed by other team members who had an opportunity to claim it (*see* D.E. 17-1, p. 18 (overtime was offered to all members of the team and often declined by the others); (2) overtime on his new team was available to others on the team but not to him; or (3) overtime was not available to anyone on his new team.

---

[1] It is unclear whether Molina considers himself entitled to a disability accommodation under the Americans With Disabilities Act. If so, he has wholly failed to plead such a claim and, rather, appears to contend that his ability to do his original job remained unchanged. In order to be entitled to relief as "disabled," he would have to plead and prove that he suffered from "a physical or mental impairment that substantially limits one or more major life activities . . . ." 42 U.S.C.A. § 12102.

Molina's own assertions are conclusory. D.E. 17-1, p. 4; 21-2. His remaining exhibits do not constitute summary judgment evidence. The Statement of Donna Vidales, D.E. 21-4, is not sworn as an affidavit or signed under penalty of perjury as an unsworn declaration. See 28 U.S.C. § 1746. The statement of Edward Alvarez and Norman Scott Dozier is likewise unsworn and improper in that one statement is signed by two individuals. D.E. 21-5, continued at 21-4, p. 2. Even if properly authenticated, those statements do not establish that Molina's transfer deprived him of available overtime.

Molina expresses his retaliation claim as arising "when his supervisor failed to take action against certain co-workers who were the source of plaintiff's concerns." D.E. 17, p. 1. Molina's "concerns" have to do with his supervisor's critique of his work in front of Molina's co-workers and a personality conflict with Mr. Lawrence. D.E. 17, p. 7. He also complains of a remark, "it takes a white man to do a Mexican's job," attributed to either Mr. Claus or Mr. Lawrence and which was not said to Molina but was rather reported to Molina later, along with additional hearsay of what he characterizes as white employees "mocking" him. D.E. 21-2, pp. 4-5. Molina also attests to Mr. Lawrence's false allegation of assault, which was investigated and dismissed. D.E. 17-1, p. 2. These complaints do not indicate that Molina suffered an adverse employment action in retaliation for any protected activity. Instead, he remained in the status quo.

Molina also complains that he wanted to be transferred to the night shift because his existing day shift was causing him stress. D.E. 17, pp. 8-9. Again, Molina is complaining about not being relieved of the status quo. The refusal to change his employment status is not an adverse employment action. Neither does he establish that

there was an opening for a transfer to the night shift that he was denied. He simply complains that he wanted a change and was not given that desired change when "[p]ositions were created for other employees but not for me." D.E. 17-1, p. 2. This is a conclusory allegation that does not supply summary judgment evidence in support of a claim of adverse employment action.

Last, Molina states, "Plaintiff was put in or transferred to a position where his career path was less suitable for advancement or other positive opportunities." D.E. 17, p. 12. As noted above, an alleged loss of the possibility of a future promotion is not actionable. *Banks, supra*. There were three teams of journeyman mechanics. Molina and Mr. Lawrence were both on Team 2. When their supervisor decided to make a move to reduce the conflict between them, he moved Molina to Team 1 and moved Mr. Lawrence to Team 3. Molina claims that he is viewed by his co-workers as a troublemaker and that he has "missed overtime" being on Team 1. But again, this allegation is conclusory and does not demonstrate that his employment status has changed or the ability to earn overtime has been denied.

According to Molina's second tier supervisor, Marc Anthony Gonzalez, "Because of the on-going difficulties between the two men, I moved each of them to different Teams. The work was similar and met the same series, same grade and same time requirements of Team 2. They were doing the same type of work under the same terms, benefits and conditions of employment." D.E. 15-7, p. 5. Molina has failed to establish a material change in his employment status to support his claims for age discrimination,

racial discrimination, or retaliation. *Breaux, supra* at 157-58. The Motion for Summary Judgment is GRANTED and these claims are DISMISSED.

## NO CLAIM FOR HOSTILE WORK ENVIRONMENT

Molina's Complaint (D.E. 1) does not contain an allegation of hostile work environment. However, he briefs that cause of action in his Response (D.E. 17, pp. 7-9). Like his other claims, any harassment must include an adverse employment action: that the harassment complained of affected a term, condition, or privilege of employment. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). For harassment to affect a term, condition, or privilege of employment, it must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *Id*.

> In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice."

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-117, 122 S.Ct. 2061, 2074 (2002).

While Molina complains of being belittled by his first tier supervisor and being harassed by Mr. Lawrence, McHugh did take action to relieve the personality conflicts by reassigning both men to different teams with new first tier supervisors. Molina's claim of a single isolated racial remark, a single false allegation of assault that was investigated and dismissed, supervisory criticism of his work while he remained essentially in the same employment position, and hearsay of being "mocked" behind his back, even if supported by summary judgment evidence, would not state a cognizable hostile work environment claim. As set out above, the ordinary tribulations of the workplace do not state a constitutional deprivation. Neither does Molina's Complaint (D.E. 1) include any hostile work environment claim as being among the claims included in his effort to exhaust administrative remedies.

## CONCLUSION

For the reasons set out above, Defendant McHugh's Motion to Dismiss and for Summary Judgment (D.E. 14, 15) is GRANTED and this action is dismissed with prejudice.

ORDERED this 5th day of August, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE